IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-00487-RM-MEH

WHEATRIDGE OFFICE, LLC,

    Plaintiff,

v.

AUTO-OWNERS INSURANCE COMPANY,

    Defendant.

---

# ORDER

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Defendants' Motion for Leave to File Amended Answer to First Amended Complaint, Jury Demand and Counterclaims. ECF 50. For the following reasons, the motion is granted.

## I.    Background

This case arises out of an insurance dispute between Plaintiff and Defendant. Defendant issued an insurance policy to Plaintiff providing coverage for real property located at 6990 West 38th Avenue, Wheat Ridge, Colorado ("the Property"). A hail and wind storm hit the Property on May 8, 2017, and Plaintiff made a claim under the policy. Defendant investigated the claim, including engaging an independent adjuster, engineer, and HVAC consultant to assist; Defendant estimated the damage at $20,180.04 replacement cost value with a cash payment of $5,359.17 (after deductible). In response to the Defendant's estimate, Plaintiff hired Compass Adjusting, Inc. ("Compass") as his contractor. Compass hired Shields Engineering Group to provide an engineering report. Mr. Shields inspected the property and concluded that there was substantial functional and physical damage. Mr. Shields sent his report to Compass with his recommendation of a full roof

replacement and also replacement of damaged metal roof appurtenances. Compass further identified damage to the HVAC units and solar screens, and requested Defendant schedule a reinspection. On April 11, 2018, Compass completed its estimate with a replacement cost value of $310,762.93. After further inspection and/or testing on the HVAC units, on or about February 18, 2019, Plaintiff submitted its sworn proof of loss to Defendant and Plaintiff's final estimate from Compass for observable covered damages with a replacement cost value of $593,040.28. According to its statement in the Scheduling Order, after further inspections and consideration of the loss by Defendant, its cash value payment was increased by $2,547.74, then by an additional $3,006.69, and finally by an additional $11,767.39.

Plaintiff alleges Defendant breached the contract of insurance by failing to consider all relevant information submitted by Plaintiff on the claim, and by failing to pay covered benefits under the Policy. Plaintiff also seeks damages under Colo. Rev. Stat. § 10-3-1115, including attorney's fees and two times the covered benefit, as allowed under Colo. Rev. Stat. § 10-3-1116. Defendant denies any breach of the insurance contract or unreasonable delay or denial.

In the original Answer filed on April 11, 2019, ECF 14, Defendant did not assert counterclaims. It did allege the following affirmative defenses (citations omitted):

1. Plaintiff's claims and damages may be barred by its own breach of the covenant of good faith and fair dealing, due to Plaintiff's conduct in connection with the Claim, which includes, but is not limited to: (i) failing to submit a timely sworn proof of loss; (ii) submitting to Auto-Owners a sworn proof of loss that included inflated costs to repair alleged damages; (iii) submitting to Auto-Owners a sworn proof of loss that included repair costs for undamaged property; (iv) failing to provide Auto-Owners with full and accurate information regarding its Claim. . . .

2. Plaintiff's claims for relief are barred or reduced, in whole or in part, by the applicable terms, conditions, and exclusions of the Policy. For example, Plaintiff failed to satisfy certain conditions precedent to coverage under the Policy when it failed to give prompt notice of the Claim and to the extent it violated the Anti-Misrepresentation clause, Full Compliance clause, and

> Cooperation clause upon its submission of an inflated and inaccurate sworn proof of loss.

3. Plaintiff's alleged damages and losses, if any, may be due to conditions, causes, damages, or circumstances which existed prior to the Policy's inception, or conditions, causes, damages, or circumstances which existed prior to the alleged date of loss, or developed after the alleged date of loss, for which Auto-Owners is not responsible in this litigation.

4. Plaintiff's claims may be barred, in whole or in part, by the doctrines of setoff and payment, prevention of performance, waiver, laches, unclean hands, estoppel, equitable estoppel, comparative fault and/or bad faith.

In its motion filed February 7, 2020, Defendant seeks to amend its answer to assert the following counterclaims: (1) a declaratory judgment that the policy does not provide coverage for the hail damage claim because Plaintiff has breached the insurance contract by failing to cooperate with Defendant, failing to provide relevant documents, and submitting inflated estimates; (2) a declaratory judgment that Defendant is not obligated to cover all or part of Plaintiff's alleged damages; (3) breach of contract; (4) breach of the covenant of good faith and fair dealing; (5) unjust enrichment; and (6) recoupment. Defendant bases its motion and proposed counterclaims on the following revelations that have occurred during recent discovery:

1. At the depositions of Plaintiff's public adjustor (on December 4, 2019) and contractor (on November 21, 2019), Defendant learned of knowing misrepresentations concerning the value of the loss. Specifically, the public adjustor submitted an invoice for over $95,000 in repair costs, knowing that the actual cost was between $27,000 and $29,000; the public adjustor was aware that the contractor had a history of inflating repairs; the contractor "padded invoices" with excessive margins of profit; the public adjustor deliberately manipulates estimate software to arrive at what he thinks the cost will be; and the public adjustor inappropriately applied the amount of depreciation to the allegedly damaged parts of the Property.

2. Upon receipt of Plaintiff's Eighth Supplemental Disclosures on January 14, 2020, Defendant learned that the Property had extensive prior damage that had not been disclosed.

Plaintiff's principal argument in opposition is that "all relevant alleged new facts referenced in Defendant's Motion were known to it prior to the deadline to amend its pleadings: July 29, 2019." Response at 1 (ECF 58). Plaintiff does not appear to challenge that the November and December 2019 depositions and the January 2020 supplemental disclosures did, in fact, reveal new information, but rather that Defendant had knowledge of some of these facts long before the deadline for amendment. Plaintiff also argues that, at least for the alleged revelations that occurred during the depositions, the information obtained was in the nature of opinions and not facts. As for the disclosures, Plaintiff argues that the information was generated by engineers and HVAC professionals hired by Defendant. Plaintiff also argues as to preexisting damage, as of the filing of the original Answer, Defendant knew that some components of the Property may have already had damage. Finally, Plaintiff argues that the proposed counterclaims are in the nature of fraud claims that must be pleaded under a heightened standard, and that under that standard, the proposed amendment would be futile. Perhaps most significantly, Plaintiff contends that even if estimates provided by its agents were inflated, Plaintiff itself did not have knowledge of the alleged misstatements. Finally, Plaintiff asserts that Defendant did not diligently pursue discovery which could have revealed the "new" information much earlier in the case. For all these reasons, Plaintiff argues that good cause has not been established, and that the legal standard for amending the Scheduling Order has not been met here.

Defendant replies that although it may have known of some preexisting damage, Plaintiff concealed its extent until recently. Defendant does not provide evidence that Plaintiff itself knew of the overinflated estimates, but rather that "Plaintiff and its agents misrepresented the cost and scope of necessary repairs," Reply 4, ECF 66, and that a party's public adjuster is "Plaintiff's agent as a matter of law." *Id.* at 8. Defendant also explains and documents that it has pursued discovery

4

at a normal pace. Finally, Defendant alleges that it could not file its counterclaims under the "fraud" law cited by Plaintiff until after generating sufficient information to justify the claims, and that its counterclaims as stated pass the motion to dismiss standard of plausibility.

**II.	Analysis**

    1.	<u>Legal Standards</u>

At the outset, depending on the date filed, Defendants' motion may necessitate an amendment of the Scheduling Order under Rule 16(b), which would require that Defendants show good cause. Fed. R. Civ. P. 16(b)(4); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 n.4 (10th Cir. 2006) ("This Circuit adopted a similar interpretation of Rule 16(b)'s 'good cause' requirement in the context of counterclaims asserted after the scheduling order deadline." (citing *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1518–19 (10th Cir. 1990))). Here, the Scheduling Order provides that deadline for the parties to amend the pleadings is July 29, 2019. ECF 20 at 14. The current motion was filed on February 7, 2020. Because Defendant seeks leave to amend its Answer after the Scheduling Order's deadline for amendment of pleadings, the motion implicates both Rules 15 and 16.

Rule 16 dictates that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015) (quoting *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)).

> Rule 16(b)'s "good cause" standard is much different than the more lenient standard contained in Rule 15(a). Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment.

5

>   Properly construed, "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts.

*Colo. Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000) (quoting *Dilmar Oil Co., v. Federated Mut. Ins. Co.*, 986 F. Supp. 959, 980 (D.S.C. 1997)). "Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed." *Gorsuch*, 771 F.3d at 1240. However, "[a] litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend." *Perez v. Denver Fire Dep't*, 243 F. Supp. 3d 1186, 1200 (D. Colo. 2017) (emphasis added). "To demonstrate good cause pursuant to Rule 16, the moving party must . . . 'provide an adequate explanation for any delay.'" *Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co.*, LLC, 300 F.R.D. 678, 681 (D. Colo. 2014) (quoting *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009)); *D.R. Horton, Inc.-Denver v. Travelers Indem. Co. of Am.*, 281 F.R.D. 627, 630 (D. Colo. 2012). Further, a court may consider the procedural posture of a case in a Rule 16(b) "good cause" analysis. *See Nicastle v. Adams Cty. Sheriff's Office*, No. 10-cv-00816-REB-KMT, 2011 WL 1465586, at *3 (D. Colo. Mar. 14, 2011).

Rule 15 states that after the deadline for amending a pleading as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The grant or denial of an opportunity to amend is within the discretion of the Court, "but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Maloney v. City of Pueblo*, 323 F.R.D. 358, 360 (D. Colo. 2018) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by

amendments previously allowed, or futility of amendment." *Id.* (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

Prejudice in this context arises when the amendment unfairly affects the opposing party "'in terms of preparing their defense to the amendment.'" *Minter*, 451 F.3d at 1208 (quoting *Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)). Prejudice occurs most often "when the amended claims arise out of a subject matter different from what was set forth in the complaint and raise significant new factual issues." *Id.*

2. <u>Whether Good Cause Has Been Established</u>

The evidence of record establishes that Defendant had some knowledge of the issues with damage estimates and preexisting damage early in the case. Indeed, Defendant raised these matters in its affirmative defenses in the original Answer. However, I have seen plaintiffs in similar cases seek to amend a complaint to add damages for overly aggressive litigation tactics by an insurance company. I do not fault Defendant for proceeding cautiously in asserting counterclaims until sufficient evidence is generated in discovery to justify such claims. Here, Defendant asserts that only with the recently obtained information did it understand Plaintiff's direct involvement with the alleged overstatement of repair costs and understatement of prior existing damage.

The Court concludes that Defendant's motion is not unduly delayed, and that good cause exists for granting it. I find that Defendant's counterclaim may have been overly susceptible to a motion to dismiss had Defendant not generated sufficient information to form a good faith belief that it was provided misinformation deliberately. There has been no undue delay in seeking discovery on the matters underlying the new counterclaims, and the parties have sufficient time to complete discovery on the counterclaims (three months); thus, Plaintiff will suffer no undue prejudice in terms of its ability to defend against the counterclaims. Finally, the subject matter of the counterclaims

is consistent with what was set forth in the original Answer and do not raise significant new factual issues.

## III. Conclusion

Rule 15(a) requires that courts "freely give leave when justice so requires." The Supreme Court has stated, "[i]f the underlying facts or circumstances relied upon by a [claimant] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim in the merits." *Foman*, 371 U.S. at 182. Here, the Court finds that Defendant's proposed amendments are timely, will not prejudice the Plaintiff, and are not made in bad faith. Plaintiff is granted leave to raise any futility arguments in response to the amended pleading.

Accordingly, Defendant's Motion for Leave to File Amended Answer to First Amended Complaint, Jury Demand and Counterclaims, ECF 50, is **granted** as set forth herein. The Defendant shall file a clean copy of the Amended Answer to First Amended Complaint, Jury Demand and Counterclaims (ECF 50-7), signed in accordance with Fed. R. Civ. P. 11, on or before March 27, 2020. Plaintiff shall respond to the First Amended Counterclaims in accordance with Fed. R. Civ. P. 15 and all applicable local and federal rules.

SO ORDERED.

Dated at Denver, Colorado, this 24th day of March, 2020.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge